**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| IN RE: | : | |
|    PETER A. MEDAGLIA | : | BK No. 1:08-bk-12804 |
| | : | |
|    Debtor | : | Chapter 13 |

**MEMORANDUM IN SUPPORT OF ROBERT BUONANO'S MOTION FOR RELIEF FROM AUTOMATIC STAY IN ORDER TO RECORD DEED AND TO TAKE POSSESSION**

NOW COMES, Movant, Robert Buonano ("Buonano"), pursuant to 11 U.S.C. §§ 362(d)(1)-(d)(2), LBR 4001-1 and 11 U.S.C. § 1322(c)(1) and hereby files the within Memorandum in Support of his Motion for Relief from Automatic Stay to Record Deed and to Take Possession.

**Summary of Argument**

The central issue presented in the instant motion is whether the high bidder at a properly conducted foreclosure sale is entitled to the property if a bankruptcy petition was filed before the high bidder recorded the deed on the property.

In 1994, 11 U.S.C. § 1322(c)(1) came into effect, and since then, courts have utilized this statutory provision to decide the issue at hand. This Court had an opportunity to review the instant issue using 11 U.S.C. § 1322(c)(1).

Under 11 U.S.C. § 1322(c)(1) a debtor can cure a default on a mortgage only ". . . until such residence is sold at a foreclosure sale . . . ." *See* 11 U.S.C. § 1322(c)(1). The majority of courts have interpreted this statute to mean that after the sale of residence at foreclosure auction the debtor can no longer cure a default and the high bidder is therefore entitled to relief from the automatic stay in order to record the deed and to take possession. *See In re Connors*, 497 F.3d

314, 323 (3rd Cir. 2007); *In re Cain*, 423 F.3d 617, 621 (6th Cir. 2005); *In re Crichlow*, 322 B.R. 229, 237 (Bkrtcy. D. Mass. 2004); *In re McCarn*, 218 B.R. 154, 160 (10th Cir. 1998); *In re Bobo*, 246 B.R. 453, 459 (Bkrtcy.D.Dist.Col. 2000); *In re McKinney*, 344 B.R. 1, 5-6 (Bkrtcy.D.Me. 2006).

In the instant matter, Buonano, purchased the alleged residence of Debtor, Peter A. Medaglia ("Medaglia") at foreclosure auction, but before he recorded the deed, Medaglia filed a Chapter 13 voluntary bankruptcy petition. Accordingly, Buonano, respectfully submits that, under 11 U.S.C. § 1322(c)(1) he is entitled to relief from the automatic stay to allow him to record the deed and take possession.

**Pertinent Background Facts**

Prior to September 9, 2008, Medaglia ("Medaglia") was the mortgagor of property and buildings located thereon at 142 South Killingly Road, Foster, Rhode Island 02825 (the "Property"). The mortgagee for the Property was National City Bank, National City Mortgage Company, P.O. Box 856176, Louisville, Kentucky ("Mortgagee").

Prior to September 9, 2008, Medaglia became delinquent on his mortgage payments to the Mortgagee. As a result of Medaglia's failure to cure his delinquency on the payments, the Mortgagee began foreclosure proceedings on the Property and further scheduled a foreclosure sale for September 9, 2008 ("Foreclosure Sale").

On September 9, 2008, the date of the Foreclosure Sale, Buonano was the successful high bidder for the Property. *See Memorandum of Terms and Conditions of Sale (the "Memorandum of Sale") attached hereto as Exhibit A*. Buonano bid $312,000.00 for the Property (the "Sale Amount") and provided a deposit in the amount of $5,000.00 per the terms of sale. Buonano then executed the Memorandum of Sale to complete the sale process. The Memorandum of Sale

provides in relevant part that the sale is complete when "the Buyer has made his or her deposit and has signed this Memorandum of Sale". *See Exhibit A.*

On or about September 11, 2008, two (2) days after the Foreclosure Sale was completed and almost a month after the foreclosure process began, Medaglia filed a Chapter 13 voluntary bankruptcy petition in the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy"). Due to the fact that Buonano had not yet recorded the deed evidencing the sale of the Property prior to Medaglia filing the Bankruptcy, Buonano has filed the instant motion for relief from the automatic stay to allow him to record the Deed on the Property and further, to take possession of the Property.

## **Standard of Review**

A court deciding a motion for relief from stay must "determine whether the party seeking relief has a colorable claim to property of the estate." *In re Harritos*, 1995 WL 505537, *1 (Bkrtcy.D.R.I. 1995) (citing *Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 33 (1st Cir.1994)). The hearing on a motion for relief from stay should "be a summary proceeding", and further under the statute the bankruptcy court should take action quickly. *Grella,* 42 F.3d at 33.

Under 11 U.S.C. § 362(d), the grounds for relief from stay are, "the adequacy of protection for the creditor, the debtor's equity in the property, and the necessity of the property to an effective reorganization." *Id.*

**Argument**

I. **THIS COURT HAS NOT REVIEWED THE IMPLICATIONS OF 11 U.S.C. § 1322 (C)(1) AS IT RELATES TO THE ISSUE PRESENTED IN THE INSTANT MATTER**

Buonano is well-aware of this Court's decisions in *In re Glenwood,* 134 B.R. 1012 (Bankr. D.R.I. 1991) and in *In re Burns*, 183 B.R. 670 (Bankr. D.R.I. 1995)[1] in which this Court held that under the race notice doctrine, the filing of a bankruptcy petition prior to the recording of a mortgagee's deed subordinates the foreclosure sale to the rights of the Trustee. *See In re Burns*, 183 B.R. at 670.

But, this Court has not yet had an opportunity to decide a situation similar to the instant matter under 11 U.S.C. § 1322(c)(1), which came into effect in 1994, where a bankruptcy petition was filed before the high bidder at foreclosure auction could record a deed on the property.

Since § 1322(c)(1) was enacted, courts in other jurisdictions which have decided this issue have referred to this statute to decide the matter, and the vast majority of these courts have decided that the high bidder is in fact entitled to relief from stay to take possession of the property despite an intervening bankruptcy petition. *See In re Connors*, 497 F.3d 314, 323 (3rd Cir. 2007); *In re Cain*, 423 F.3d 617, 621 (6th Cir. 2005); *In re Crichlow*, 322 B.R. 229, 237 (Bkrtcy. D. Mass. 2004); *In re McCarn*, 218 B.R. 154, 160 (10th Cir. 1998); *In re Bobo*, 246 B.R. 453, 459 (Bkrtcy.D.Dist.Col. 2000); *In re McKinney*, 344 B.R. 1, 5-6 (Bkrtcy.D.Me. 2006).

---

[1] Although *Burns* is a 1995 decision, a review of this Court's decision demonstrates that 11 U.S.C. § 1322 was not considered.

### A.     11 U.S.C. § 1322(c)(1) was Enacted to Clarify the Time Period in Which a Debtor Could Cure a Mortgage Default after Foreclosure Proceedings are Commenced

The time period in which a debtor has a right to cure a default in a mortgage is clearly defined by Section 1322(c)(1), which provides in pertinent part:

> (c) Notwithstanding subsection (b)(2) and applicable non-bankruptcy law –
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) **until such residence is sold at foreclosure sale** that is conducted in accordance with applicable non-bankruptcy law.

*See* 11 U.S.C. § 1322(c)(1) (emphasis added).

11 U.S.C. § 1322(c)(1) was enacted as a way to ensure that debtors could cure a default after a court order permitting foreclosure but prior to the foreclosure sale. *See In re Crichlow*, 322 B.R. at 232. The legislative history of Section 322 states that the statute "will preempt conflicting state laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs." *See id.* (Citing 140 Cong. Rec. S 14462 (Oct. 6, 1994)).

Courts are not in dispute as to whether this provision controls the issue of whether a high bidder at a foreclosure sale has a right to relief from the automatic stay where a bankruptcy petition was filed before the high bidder could record a deed on the property. *See In re Connors*, 497 F.3d at 319; *In re Cain*, 423 F.3d at 619; *In re Crichlow*, 322 B.R. at 231-232; *In re McCarn*, 218 B.R. at 160; *In re Bobo*, 246 B.R. at 454-455. Rather, a dispute has arisen in the courts as to when a foreclosure sale is in fact final under Section 1322(c)(1) thus precluding the debtor from any further interest in the foreclosed property. *See In re Connors*, 497 F.3d at 319; *In re Cain*,

423 F.3d at 620; *In re Crichlow*, 322 B.R.at 233; *In re McCarn*, 218 B.R.at 160; *In re Bobo*, 246 B.R. at 455-456. [2]

Courts have fallen into two separate schools of thought regarding this matter. The majority line of thought holds that Section 1322 is unambiguous and cuts off the right to cure at the foreclosure auction itself. *In re Crichlow*, 322 B.R.at 233. The second line of thought finds the language ambiguous and looks to the legislative history for guidance and further finds that the "debtor's right to cure extends beyond the auction date to the point in time where the sale is completed under state law." *See In re Cain,* 423 F.3d at 620.

> **B.** **Under the Majority Interpretation of 11 U.S.C. § 1322(c)(1) the Mortgagor Loses the Right to Redeem the Property at the Foreclosure Auction**

Under the majority interpretation of Section 1322(c)(1), which is the better interpretation of the statute, courts find no ambiguity in the statute and further find that a debtor's right to redeem is cut off at the foreclosure auction sale. *See In re Connors*, 497 F.3d at 319; *In re Cain*, 423 F.3d at 620; *In re Crichlow*, 322 B.R.at 234; *In re McCarn*, 218 B.R.at 160; *In re Bobo*, 246 B.R. at 455-456. This interpretation of Section 1322(c)(1) is also called the "Gavel Rule". *See In re Connors*, 497 F.3d at 318.

In interpreting a statute, the first step is to examine the language itself, and if the text is clear "the text assumes overriding importance," further '[d]ue weight must be given to the words of the statute so that none are rendered superfluous." *In re Crichlow*, 322 B.R.at 234 (*citing U.S.*

---

[2] A ruling that the foreclosure sale severs a debtor's right to redeem a foreclosed property will better serve the public interest because it will encourage higher bids and a predictable bidding process because bidders at foreclosure sales will be ensured that they will be entitled to the property at conclusion of the auction. Whereas, the possibility of the highest bidder losing rights to the property after the sale will certainly "chill" bids. Secondly, if foreclosure sales are ruled to be final, money will be saved as it will not be necessary to conduct two or more auctions if the sale is in fact not ruled to be final. Moreover, Debtor's interests are adequately protected because they have more than sufficient notice of time to file a proceeding prior to the auction sale.

*v. Ron Pair Enter., Inc*., 489 U.S. 235, 241 (1989); *In re Weinstein*, 272 F.3d 39, 43 (1st Cir. 2001); *Duncan v. Walker,* 533 U.S. 167, 174 (2001)).

A reading of the unambiguous language of the statute clearly indicates that the phrase "until such residence is sold at foreclosure sale" means that "relevant state law is inapplicable" and that the right to redeem is foreclosed at the foreclosure auction. *In re Crichlow*, 322 B.R.at 233-234 ("The phrase 'sold at a foreclosure sale' refers to the sale that occurs at a foreclosure auction not pursuant to or after."); *In re Cain*, 423 F.3d at 620 (The term "foreclosure sale" refers to "a single, discrete event-typically an auction at which the highest bidder purchases the property.").

A reading of the unambiguous language of the second portion of the statute which states as follows: "that is conducted in accordance with the applicable non-bankruptcy law", only refers to an analysis as to whether the foreclosure sale that took place was conducted properly under state law and does not require a determination of when a foreclosure sale is final under state law. *In re Crichlow*, 322 B.R. at 233-234 ("The phrase in the statute that refers to 'conducted in accordance with applicable nonbankruptcy law' is a requirement that the foreclosure was held in compliance with applicable state laws. To rule that this phrase requires that I examine the issue under state law removes from the statute the word 'conducted', a construction I am counseled to avoid."); *In re Cain*, 423 F.3d at 620 ("We are not persuaded that the phrase 'conducted in accordance with applicable non-bankruptcy law' expands the meaning of 'foreclosure sale' to encompass a state-law redemption period. As we see it, this language does no more than require that the sale adhere to procedures mandated by state law.").

Accordingly, under the majority Gavel Rule, a high bidder at a foreclosure sale is entitled to relief from an automatic stay where the mortgagor files for bankruptcy before the foreclosure

deed can be recorded. *See In re Connors*, 497 F.3d at 323; *In re Cain*, 423 F.3d at 621; *In re Crichlow*, 322 B.R. at 237; *In re McCarn*, 218 B.R. at 160; *In re Bobo*, 246 B.R. at 459.

      C.      **Under the Minority Interpretation of 11 U.S.C. § 1322(c)(1) the Mortgagor Loses the Right to Redeem the Property When the Foreclosure Sale is Consummated Under State Law.**

The minority interpretation of 11 U.S.C. 1322(c)(1) finds an ambiguity in the statute and further finds that the time at which the debtor's right to redeem is cut off when a foreclosure sale is considered final under state law.

Under the minority approach, courts interpret the phrase "is conducted in accordance with the applicable non-bankruptcy law" to mean that the right to mortgagor's right to redeem is cut off when the foreclosure sale would be considered final under state law. *See In re Crichlow*, 322 B.R. at 237; *In re Cain*, 423 F.3d at 620.

The minority interpretation of § 1322(c)(1) *is not the correct approach* because it does not give meaning to the word "conducted" which is contained in the statute. The provision in question reads "until such residence is sold at foreclosure sale that is conducted in accordance with the applicable non-bankruptcy law." *See* 11 U.S.C. 1322(c)(1) (emphasis added). The word "conducted" clearly indicates that the state law should be analyzed to determine whether the foreclosure sale was *conducted* in accordance with state law. *In re Crichlow*, 322 B.R. at 233-234.

The minority interpretation ignores the word "conducted" and rewrites the statute to read "until such residence is sold at foreclosure sale that is in accordance with the applicable non-bankruptcy law." This approach is wholly inappropriate because a basic cardinal rule of statutory interpretation is that "[d]ue weight must be given to the words of the statute so that none are rendered superfluous." *In re Crichlow*, 322 B.R.at 234 (*citing Duncan,* 533 U.S. at 167).

8

Accordingly, this court should dismiss the minority interpretation of § 1322(c)(1) in its analysis of the statute as is it ignores the plain language of the statute. *In re Crichlow*, 322 B.R.at 234; *In re McKinney*, 344 B.R. at 5-6 ("I agree with Judge Hillman that § 1322(c)(1)'s words are 'sufficiently clear,' so that I need not repair to the 'dimly lit passages of legislative history,' to divine its meaning. The phrase 'sold *at* a foreclosure sale' refers to a sale that occurs *at* a foreclosure auction. The additional phrase '*conducted* in accordance with applicable nonbankruptcy law' requires that state law be consulted to assure the sale was noticed, convened, and held (*i.e.,* '*conducted*') in compliance with state law." (citations omitted)).

## II. **BUONANO IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY UNDER BOTH INTERPRETATIONS OF 11 U.S.C. § 1322(c)(1)**

Regardless of which interpretation of 11 U.S.C. § 1322(c)(1) the Court decides to utilize, Buonano is entitled to relief from the automatic stay to allow him to record the deed and take possession of the Property.

### A. **Under the Majority Interpretation of 11 U.S.C. § 1322, Medaglia Lost his Right to the Property at the Foreclosure Sale**

As stated above, the majority interpretation of § 1322(c)(1), or the Gavel Rule, mandates that a high bidder at a foreclosure sale is entitled to relief from an automatic stay where the mortgagor files for bankruptcy before the foreclosure deed can be recorded.

The United States Bankruptcy Court for the District of Massachusetts, Eastern Division in *In re Crichlow* addressed an issue almost identical to the instant matter. *Crichlow, 322 B.R. at 231.* In *Crichlow*, the debtor filed a Chapter 13 petition shortly after a third-party had purchased the residence at a foreclosure auction, but before the third-party bidder was able to record the deed. *Id.* In *Crichlow,* the court utilized the majority Gavel Rule and found that the debtor was not entitled to cure her default on the mortgage after the date of the foreclosure sale. *Id*. at 234.

9

When the Gavel Rule is applied to the instant matter it is clear that Buonano is entitled to relief from the automatic stay. First it is beyond dispute that the foreclosure sale itself took place and was completed on September 9, 2008, and second, it is beyond dispute that the foreclosure sale took place in full and complete accordance with Rhode Island law. Accordingly, there can be no dispute that, under the majority interpretation of §1322(c)(1), Medaglia lost his equity in the property and his right to redeem the property before the bankruptcy filing and Buonano is therefore entitled to relief from the automatic stay. *See In re Connors*, 497 F.3d at 323; *In re Cain*, 423 F.3d at 621; *In re Crichlow*, 322 B.R. at 237; *In re McCarn*, 218 B.R. at 160; *In re Bobo*, 246 B.R. at 459; *In re McKinney*, 344 B.R. at 5-6.

  B. **Under the Minority Interpretation of 11 U.S.C. § 1322(c)(1), and a Review of Applicable Rhode Island Law, Medaglia Lost his Right to the Property at the Foreclosure Sale**

As discussed above, under the minority interpretation of Section 1322(c)(1), the time in which Medaglia would have to redeem the property would be based on how Rhode Island law defines the term "sold at a foreclosure sale". Under this analysis, the foreclosure sale took place at the latest, when Buonano signed the Memorandum of Sale.

The most constructive place to start regarding this issue is the Rhode Island General Laws, more specifically, R.I. Gen. Laws § 34-11-22 entitled "Statutory Power of Sale and Mortgage" under which this foreclosure sale took place, and R.I. Gen. Laws § 34-27-4 entitled "Publication of Notice Under Power of Sale". Both of these statutes clearly treat a foreclosure sale as "a discrete event that occurs at a specified time and place." *See In re Cain*, 423 F.3d at 620 (citing similar Michigan Laws for the point that a foreclosure sale under Michigan Law is complete after the bidding). This is the case because § 34-11-22 states in relevant part that the mortgagee may provide notice by "published notice of sale first by mailing written notice of a time and *place of sale* by certified mail, return receipt requested, to the mortgagor, . . . ", and

§ 34-27-4 states in relevant part that "the mortgage shall provide for the giving of notice of the sale by publication in some public newspaper at least once a week for three (3) successive weeks *before the sale*. (emphasis added). From these statutes, it is evident that the General Assembly envisioned a foreclosure sale as taking place at a discreet and certain identifiable time to be scheduled, or in other words, at the date of the foreclosure auction. *See In re Cain*, 423 F.3d at 620.

Rhode Island case law does not provide guidance on the clear language of the above-referenced statutes. However, it is instructive to look at Massachusetts case law in this matter as Massachusetts like Rhode Island, is a "title theory" state. *See In re Crichlow*, 322 B.R. at 237; *In re D'Ellena*, 640 A.2d 530 (R.I. 1994). In Massachusetts, the foreclosure sale is final when the memorandum of sale is signed. At that point, the mortgagor's right to redeem is cut off. *See In re Crichlow*, 322 B.R. at 235. This conclusion is further supported by the terms of the signed contract in the matter before this Court. The Memorandum of Sale, specifically states, in pertinent part, that "[t]he sale shall not be deemed *completed* until the buyer has made his or her deposit and signed this Memorandum of Sale." *See Exhibit A* (Emphasis added). Both steps required in the Memorandum of Sale were completed.

Further, even though Rhode Island law provides for a period of redemption, this period is cut off at the foreclosure sale, and further a redemption period "does not mean that the 'completion of a foreclosure sale' occurs only upon expiration of a state law redemption period." *See In re Cain*, 423 F.3d at 621, 622. In fact, "to the contrary, it suggests that a redemption period" is separate from the foreclosure sale. *See Id.*

Accordingly, in the instant matter, even under the minority interpretation of Section 1322(c)(1), the time within which the mortgagor has to redeem a mortgaged property ends at the

11

latest, at the time of the signing of the memorandum of sale.  Therefore, in the instant matter, Medaglia's right to redeem was cut off on September 9, 2008, before the Bankruptcy was filed. Accordingly, Buonano is entitled to a relief from the automatic stay to record his deed on the property and further to take possession of the Property.

Therefore, since the foreclosure sale ended Medaglia's right to redemption, Medaglia no longer has any interest or equity in the property, and further, Buonano is not adequately protected by Medaglia's possession of the property as he is not receiving any rents for Medaglia's use and cannot utilize the Property himself.  Accordingly it is clear that the Property is not and never was property of the Debtor's estate and cannot therefore be necessary to an effective reorganization.

### III.    BUONANO IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY UNDER A RACE NOTICE ANALYSIS

Even if this case is analyzed without § 1322(c)(1), which Buonano respectfully suggests would be in error, Buonano is entitled to relief from the automatic stay as a hypothetical bona fide purchaser under 11 U.S.C. § 544 would have had constructive notice of the foreclosure sale through the doctrine of "inquiry notice".

The doctrine of inquiry notice provides that a person is considered to have inquiry notice "of facts that would put a reasonably prudent person on a duty of inquiry". *Matter of Hamilton*, 125 F.3d 292, 299 (5th Cir.1997). Rhode Island courts have recognized the doctrine of inquiry notice. *See In re Barnacle*, 623 A.2d 445, 449 (R.I. 1993); *Ciba Specialty Chemicals Corp. v. WP Properties, L.L.C.*, 2001 WL 1005855, *3 (R.I.Super. 2001).

Further, under the doctrine of inquiry notice, constructive notice of a recorded mortgage in the chain of title "puts a subsequent purchaser under a duty to make a reasonable inquiry into the status" of the mortgage. *Matter of Hamilton*, 125 F.3d at 299. Numerous Federal Circuit

Courts of Appeals that have utilized the doctrine of inquiry notice have found that a recorded mortgage is enough to put a hypothetical purchaser on notice to inquire as to the status of the mortgage. *See Butler v. Lomas and Nettleton Co.*, 862 F.2d 1015, 1018 (3rd Cir. 1988) ("The recorded mortgage would be sufficient notice to the purchaser to inquire as to the status of the mortgage, i.e., whether it was in default or in foreclosure."); *Matter of Hamilton*, 125 F.3d 292, 301 (5th Cir. 1997) ("A reasonably prudent hypothetical purchaser of the Hamilton property, on constructive notice of the deed of trust, two days after the foreclosure sale but before the substitute trustee's deed was recorded, would have made a reasonable inquiry into whether the deed of trust had been released, extended, renewed, or foreclosed, using information at hand.").

Likewise, in the instant matter, there is no question that a hypothetical purchaser would have been on constructive notice of the mortgage on the Property. Accordingly, the hypothetical purchaser would have had a duty under the doctrine of inquiry notice to inquire as to the status of the mortgage. A simple inquiry into the status of the mortgage would have alerted the hypothetical purchaser that Buonano had purchased the Property at foreclosure sale, thus providing the hypothetical purchaser with actual notice under the sale and barring the hypothetical purchaser from becoming a hypothetical bona fide purchaser under Rhode Island law and 11 U.S.C. § 544.

### Conclusion

For the reasons stated above, Medaglia no longer has any interest or equity in the property, and further, Buonano is not adequately protected by Medaglia's possession of the property as he is not receiving any rents for Medaglia's use and cannot utilize the Property himself.  Upon the Foreclosure Sale, Medaglia no longer had an equity interest in the Property as he and the Mortgagee ceased to have an interest in the Property or own the Property.  In effect,

the Property is not and never was property of the Medaglia's estate and cannot therefore be necessary to an effective reorganization.

WHEREFORE, Buonano respectfully requests that this court grant his Motion for Relief from Automatic Stay to Record Deed and to Take Possession, and that this Court provide Buonano with such further other relief as it deems just, reasonable and necessary.

                Respectfully submitted,

                Movant, Robert Buonano

                By his Attorneys,

                /s/ Joseph P. Ferrucci
                Joseph P. Ferrucci (#4231)
                Christopher M. Mulhearn (#5188)
                **FERRUCCI RUSSO P.C.**
                55 Pine Street, 4th Floor
                Providence, RI 02903
                Tel.: (401) 455-1000
                Fax: (401) 455-7778
                Email: jferrucci@frlawri.com
                Email: cmulhearn@frlawri.com

Dated:  October 27, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the within was served via electronically to the following participants on this 27th day of October, 2008

   John Boyajian    john@bhrlaw.com martha@bhrlaw.com
   Kathryn A. Fyans    ribk@harmonlaw.com
   Edward J. Gomes    attyejg@yahoo.com
   Sandra Nicholls    ustpregion01.pr.ecf@usdoj.gov

I hereby certify that a true and accurate copy of the within was served via certified mail return receipt requested to the following participants on this 27th day of October, 2008

Mr. Peter Medaglia
142 South Killingly Road
Foster, RI  02825-1629

                /s/Joseph P. Ferrucci