UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

PETER A. MEDAGLIA             :    BK No. 08-12804
                Debtor                   Chapter 13

- - - - - - - - - - - - - - - - - -x


### <u>DECISION</u>

APPEARANCES:

> Edward J. Gomes, Esq.
> Attorney for Debtor
> 91 Friendship St. Ste. 3
> Providence, RI 02903-3837
>
> Joseph P. Ferucci, Esq.
> Attorney for Party-in-Interest, Robert Buonano
> Ferrucci Russo P.C.
> 55 Pine Street, 4th Floor
> Providence, RI 02903
>
> Elizabeth Lonardo, Esq.
> Attorney for Secured Creditor, National City Real
> Estate Services, LLC
> Harmon Law Offices, P.C.
> P.O. Box 610345
> Newton Highlands, MA 02461-0345

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 08-12804

Today's decision will overrule this Court's prior rule and practice as to how to determine the winner of the frequently-run race between home-mortgage debtors and foreclosure sale purchasers of their real estate.

This dispute arises from Robert Buonano's (the "Buyer") "Motion for Relief from Automatic Stay in Order to Record a Deed and to Take Possession" of property at 142 South Kilingly Road in Foster, Rhode Island (the "Property"). Buonano purchased the Property at a (pre-petition) foreclosure auction on September 9, 2008, a Memorandum of Sale was executed on the same day, and the Buyer paid the required deposit of $5,000. On September 11, 2008, *before* the Buyer recorded his deed, the Debtor (Medaglia) filed the instant Chapter 13 case.

The Buyer argues that, under 11 U.S.C. § 1322(c)(1), the Debtor's right to cure the mortgage default terminated at the moment when the Memorandum of Sale was signed, that thereafter, the Debtor no longer had any interest in the Property, and that 142 South Killingly Road never became *property of the estate*. The Debtor objects to relief from stay, arguing that the foreclosure sale did not terminate his right to cure the loan default, and that such right stays "alive and well" until the foreclosure deed is recorded and delivered to the purchaser. The issue – *when the right to cure a loan default on the Debtor's principal residence*

1

BK No. 08-12804

*terminates under Section 1322(c)(1)* – has generated conflicting results in the bankruptcy arena.  This Court has not been called upon to address the question since the enactment of 1322(c)(1), and there is no post-enactment controlling authority in the First Circuit.[1]

### DISCUSSION

Under Section 1322(b)(5), the Debtor may provide in his plan for the curing of any default on any unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due. Section 1322(c)(1) states: "Notwithstanding subsection (b)(2) and applicable nonbankruptcy law ... a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured ... *until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law*...." (emphasis added.)  It is clear, to me at least, that the *notwithstanding* clause in Section 1322 trumps nonbankruptcy law regarding the cure of mortgage defaults on

---

[1]  We have dealt with this same fact scenario at least twice, but in cases that were commenced prior to October 22, 1994, the effective date of Section 1322(c)(1).  *See In re Burns*, 183 B.R. 670 (Bankr. D.R.I. 1995), and *In re Glenwood Associates*, 134 B.R. 1012 (Bankr. D.R.I. 1991). In those cases, when Section 544(a)(3) of the Bankruptcy Code was the law, we ruled that "the filing of the bankruptcy petition prior to the recording of the mortgagee's deed subordinates the status of the foreclosure sale purchaser to the rights of the trustee, or the debtor standing in the trustee's shoes." *Burns*, 183 B.R. at 670.  Since the enactment of Section 1322(c)(1), our old analysis is no longer applicable.

BK No. 08-12804

a debtor's primary residence. *See In re Beeman*, 235 B.R. 519, 524 (Bankr. D.N.H. 1999). And the statute itself would seem to leave no doubt that, in bankruptcy, the right to cure exists only until the property is sold at a (valid) foreclosure sale. Nevertheless, judicial disagreement has emerged over the meaning of the phrase "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." In preparing this decision, we have identified three different interpretations of Section 1322(c)(1).

The majority view (and the one I like), known as the "gavel rule," is that Section 1322(c)(1) is clear and unambiguous, and that the debtor's right to cure is cut off at the foreclosure sale. *See e.g. In re Connors*, 497 F.3d 314 (3d Cir. 2007); *In re Cain*, 423 F.3d 617 (6th Cir. 2005); *In re Smith*, 85 F.3d 1555, 1558 n.3 (11th Cir. 1996) (dictum); *In re McCarn*, 218 B.R. 154 (B.A.P. 10th Cir. 1998); *In re Crichlow*, 322 B.R. 229 (Bankr. D. Mass. 2004). Based on our research, every appeals court, with one exception described below, and every bankruptcy appellate panel that has considered the issue, has adhered to the gavel rule.

A second line of cases focuses on the word "sold" in Section 1322(c)(1), holding that a foreclosure sale is not an event, but instead, is part of a process culminating in the delivery and recordation of the deed, with the debtor's right to cure surviving

BK No. 08-12804

until title to the property passes to the purchaser under the relevant state law. *See e.g. Beeman,* 235 B.R. at 525.

And, finally, a solitary Court of Appeals has construed Section 1322(c)(1) to mean that the right to cure a default exists "*at least* up to the date of the foreclosure sale," and that if state law provides a redemption period that extends beyond the date of the foreclosure sale, then bankruptcy law defers to such state law, with the right to cure extended accordingly. *Colon v. Option One Mortgage Corp.*, 319 F.3d 912, 918 (7th Cir. 2003)(emphasis added).

This Court is most comfortable adopting the majority view on the ground that the language of the statute is clear, unambiguous, and needs no interpretation.   I also agree that the term "foreclosure sale" describes a single, discrete event, and not merely a step in a process culminating in the recordation and delivery of a deed. *Connors*, 497 F.3d at 320; *Cain*, 423 F.3d at 620.   It is not, I think, an extreme position to take, i.e., that the property is *sold* at the foreclosure sale, and that the deed is customarily not delivered to the purchaser until after the foreclosure sale.   *Connors*, at 320-321.   The delivery of a foreclosure deed has been described as a "ministerial act, routinely performed, which does not affect the redemption rights of the parties."   *Id*. at 321 (citation omitted).   Further, the words

4

BK No. 08-12804

"conducted in accordance with applicable nonbankruptcy law" do not expand the cure period according to state-law redemption rights, but rather describes a foreclosure sale conducted in compliance with (and not in violation of), relevant state law. *Connors*, 497 F.3d at 319; *Cain*, 423 F.3d at 620.

Nowhere does the statute require that the cure rights under Section 1322 terminate only upon the recordation and delivery of the foreclosure deed.  Such language is not part of the statute, and it is not within the Court's authority to read the statute as though it were in there.  "To define the word 'sold' as the point at which a deed is transferred to the prevailing bidder subsequent to the date of the auction ... removes the words 'foreclosure sale' from the statute." *Crichlow*, 322 B.R. at 234. Therefore, if the foreclosure sale did not violate applicable state law, it follows that when the gavel falls, the right to cure no longer exists. There is no suggestion in this case of any violation of, or noncompliance with applicable state law.

We reject the third view, also without difficulty, as nothing in Section 1322(c)(1) requires deference to whatever expansive cure rights may exist under state law.  The *Colon* court finds support for its view in the legislative history and scholarly texts. *Colon*, 319 F.3d at 917-918.  However, the statute does not provide or suggest that the right to cure exists *at least* until such residence

5

BK No. 08-12804

is sold at a foreclosure sale. On the contrary, Section 1322(c)(1) states unequivocally: "[n]otwithstanding ... any nonbankruptcy law...." If Congress intended to place federal bankruptcy law beneath, or subject to, certain state created rights, it could have chosen a better way to do so.

Finally, even if we were to look to state law in this case, the result would be the same because under its statutory power of sale, Rhode Island law does not provide for any post-foreclosure right of redemption.  In fact, R.I. Gen. L. § 34-11-22 states "... which sale or sales ... shall forever be a perpetual bar against the mortgagor." R.I. Gen. Laws § 34-11-22 (2008). *See also*, *Holden v. Salvadore*, 964 A.2d 508, 516 (R.I. 2009) (noting that it was not within the power of the defendant to prevent or postpone the foreclosure sale, because the sale and foreclosure had already taken place, the plaintiff herself was the highest bidder, and plaintiff and auctioneer had executed all the appropriate documents); *140 Reservoir Avenue Associates v. Sepe Investments, LLC*, 941 A.2d 805, 811-812 (R.I. 2007) (concluding that any interest of mortgagor's successor in real estate was forever barred by the foreclosure sale, where no party challenged the validity of the sale).

Based on the foregoing discussion, the authorities cited, and the arguments of the parties, Relief From Stay is **GRANTED**.

6

BK No. 08-12804

Enter Judgment consistent with this opinion.

Dated at Providence, Rhode Island, this      1st      day of

April, 2009.

_____

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 4/1/09